UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRENDA DRAKE, on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 1:19-cv-01458-RLY-DML |
| MIRAND RESPONSE SYSTEMS, INC., ) WOODFOREST NATIONAL BANK, ) ) | |
| Defendants. ) | |

## Order on Plaintiff's Motion to Compel (Dkt. 62)

This matter is before the court on plaintiff Brenda Drake's motion to compel defendant Mirand Response Systems, Inc. to answer certain document requests and interrogatories and to produce a Rule 30(b)(6) deponent for certain topics. She contends the discovery is relevant and proportional to her putative class action claims under the Telephone Consumer Protection Act and is needed to (i) file a brief to support a motion for class certification, (ii) explore the strength of Mirand's consent defense, and (iii) explore potential class damages.  The discovery disputes concern:  Document Requests (sometimes, "RFPs") 11-19, Interrogatories 9-14, and Rule 30(b)(6) topics 13-16.

The court first provides context to the discovery disputes by summarizing the claims in this litigation, the discovery at issue, the dialing systems and technology used by Mirand, and Mirand's ability to identify and produce the kind of information requested by the plaintiff without manual review of accounts.  Next,

the court sets forth the legal principles that guide its resolution of the discovery disputes and, finally, rules on the disputes.

## Background

This background is taken from various filings made by the parties. It does not constitute findings of fact binding in this litigation but gives context to the discovery matters at issue.

**I.      Ms. Drake's complaint seeks a class on her TCPA and FDCPA claims.**

This case arises under the Telephone Consumer Protection Act ("TCPA") and the Fair Debt Collection Practices Act ("FDCPA"). Discovery directed specifically at the FDCPA claim is not at issue on the plaintiff's motion to compel, and that claim will not be further addressed.

It is unlawful under the TCPA for a caller to make a call to a cell phone using "any automatic telephone dialing system or an artificial or prerecorded voice," unless the call is made with the express consent of the "called party" or for other excepted purposes not relevant to this case. 47 U.S.C. § 227(b)(1). "Automatic telephone dialing system" is a defined term that the Seventh Circuit recently interpreted in *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 460 (7th Cir. 2020).[1] "Called party" is not defined in the TCPA, but the term recently has been construed by the Seventh Circuit in *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639-43

---

[1]      There is a circuit split on the proper interpretation of "automatic telephone dialing system." *See N.L. by Lemos v. Credit One Bank, N.A.,* 2020 WL 2893707 at *6 (9th Cir. June 3, 2020) (noting split between the Seventh and Eleventh Circuits and the Second and Ninth Circuits).

(7th Cir. 2012) ("called party" is not the person the caller "intended" to receive the call but the subscriber to, or user of, the cell phone number at the time of the call).

Plaintiff Brenda Drake alleges that defendant Mirand Response Systems, Inc. is a debt collector, and it, acting as an agent for creditor Woodforest National Bank and using an automatic telephone dialing system (as defined in the TCPA) or an artificial or prerecorded voice, called her cell phone to collect a debt owed to Woodforest. It is not clear whether Ms. Drake still intends to prove that Mirand used an automatic telephone dialing system, as opposed to proof only that an artificial or prerecorded voice was used; that opacity does not affect the discovery issues. Her discovery motion states she anticipates removing from her class definition any reference to an automatic telephone dialing system, and she intends to refer only to calls made to cell phone numbers through a platform used by DialConnection, the vendor Mirand uses to facilitate the making of calls using either an ATDS or an artificial or prerecorded voice. *See* Dkt. 62 at p. 2 n.1.[2]

The complaint alleges Mirand called Ms. Drake twice in March 2019, but Ms. Drake's discovery motion states Mirand called her 30 times "and left 30 prerecorded voice messages" on her cell phone voicemail, a cell number Ms. Drake had been assigned in May 2018. (Dkt. 62 at p. 2). Ms. Drake asserts she never had an account with Woodforest and never gave consent to receive the calls, implying that

---

[2]  It is not clear whether Ms. Drake has concluded that DialConnection's platform does not meet the definition of an automatic telephone dialing system, as that statutory term has been interpreted in *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 460 (7th Cir. 2020).

Mirand was trying to reach a person who had had that cell phone number before it was assigned to Ms. Drake.[3]

Based on the amendments Ms. Drake states she anticipates making to her TCPA class definition as explained in her motion to compel, Ms. Drake will ask the court to certify a class of all persons in the United States (1) to whom Mirand placed or caused to be placed a call on behalf of Woodforest,[4] (2) directed to a cell number that was not assigned to the intended recipient at the time of the call, (3) by using an artificial or prerecorded voice, (4) from April 14, 2015, through the date of class certification.

## II.     The discovery disputes concern written discovery and Rule 30(b)(6) deposition topics.

The discovery requests at issue are RFPs 11-19, interrogatories 9-14, and Rule 30(b)(6) topics 13-16.  The temporal period begins April 14, 2015.  Further, the plaintiff seeks information about (1) telephone numbers called using the same hardware/software system that was used to call her (or her cell phone number) and

---

[3]     Ms. Drake's complaint states her belief that Mirand was trying to reach a person whose name is similar to hers and found her cell number through some sort of skip-tracing method.  *See* Complaint, ¶ 40 (alleging that "it appears" Mirand intended to reach a person with a similar name to Ms. Drake but unrelated and unknown to her). She may no longer hold that belief (which would be unrelated to her having been assigned a new cell phone number) and may now believe that Mirand intended to call her cell phone number but did not know she was assigned that number when it called.  According to Mirand's testimony, cell numbers obtained by Mirand via skip tracing are not called using its dialing system.  *See* Affidavit of Linsy Goodson, Dkt. 64-1, ¶ 10.

[4]     Ms. Drake has learned in discovery that about 99.5% of the calls Mirand makes are on behalf of Woodforest.

4

(2) telephone numbers called—whether or not using the system used to call her—using either an ATDS, predictive dialer, or artificial or prerecorded voice.[5] The court will address the document requests; the extent to which the motion to compel is granted as to those requests generally resolves the interrogatories and Rule 30(b)(6) topics.

Document request 11 seeks documents and electronically stored information sufficient to identify *the telephone numbers*[6] to which Mirand made, or caused to be made, calls *by using an ATDS, predictive dialer, or artificial or prerecorded voice.*[7]

Document request 12 seeks documents and electronically stored information sufficient to identify *the telephone numbers* to which Mirand made, or caused to be made, calls by *using the hardware or software Mirand used to place, or cause to be placed, calls* to *plaintiff Drake, or to Ms. Drake's cell phone number*.[8]

Document request 13 seeks—for the telephone numbers identified in the documents responsive to RFPs 11-12—documents and electronically stored

---

[5] For purposes of this case, there may be no difference between these two categories—(1) the hardware/software system that was used to call the plaintiff or her cell phone number and (2) an ATDS, predictive dialer, or artificial or prerecorded voice—but the plaintiff used both categories in her discovery requests to forestall any limitations to the discovery based on a contention that the system used to call the plaintiff was not the exact same system in existence throughout the putative class period.

[6] The italics are used to provide a "quick-look" differentiation among the information requested in each document request.

[7] Interrogatory 9 essentially seeks the same information as document request 11.

[8] Interrogatory 10 and Rule 30(b)(6) topic 13 seek essentially the same information as document request 12.

5

information sufficient to identify the telephone numbers for which Mirand's records show that a person associated with one of them indicated that Mirand *contacted the wrong person or wrong telephone number.*[9]

Document requests 14 and 15 seek—for all telephone numbers to which calls were made using an ATDS, predictive dialer, artificial or prerecorded voice, or by using the hardware or software used to place the calls to plaintiff Drake or her cell phone number[10]—documents sufficient to identify for which numbers a call was placed *after* Mirand's records show that the called party was not the person Mirand intended to reach or that the called party indicated that Mirand *contacted the wrong person or telephone number.*[11]

Document request 16 seeks—for all telephone numbers to which calls were made using an ATDS, predictive dialer, artificial or prerecorded voice, or by using the hardware or software used to place the calls to plaintiff Drake or her cell phone number—documents and electronically stored information sufficient to identify the

---

[9] Interrogatory 11 and Rule 30(b)(6) topic 14 seek essentially the same information as document request 13.

[10] Request 14 seeks the information with respect to numbers to which calls were made using an ATDS, predictive dialer, or artificial or prerecorded voice. Request 15 seeks the information with respect to numbers to which calls were made using the hardware or software that was used to place calls to plaintiff Drake or her cell phone number.

[11] Interrogatories 12-13 and Rule 30(b)(6) topic 15 seek essentially the same information as document requests 14-15.

numbers that were, or that Mirand's records indicate were, *assigned to a cellular telephone service.*[12]

Document request 17 seeks—for all telephone numbers to which calls were made using an ATDS, predictive dialer, artificial or prerecorded voice, or by using the hardware or software used to place the calls to plaintiff Drake or her cell phone number—documents and electronically stored information sufficient to identify *each call* Mirand placed, or caused to be placed, to the numbers.

Document request 18 seeks—for all telephone numbers to which calls were made using an ATDS, predictive dialer, artificial or prerecorded voice, or by using the hardware or software used to place the calls to plaintiff Drake or her cell phone number—documents and electronically stored information sufficient to identify *the names, addresses, and additional contact information* that Mirand has for persons it or Woodforest associates with the telephone numbers.

Document request 19 seeks—for all telephone numbers to which calls were made using an ATDS, predictive dialer, artificial or prerecorded voice, or by using the hardware or software used to place the calls to plaintiff Drake or her cell phone number—documents and electronically stored information *evidencing express consent* Mirand had to make, or cause to be made, communications, or attempted communications, to the telephone numbers.

---

[12] Interrogatory 14 and Rule 30(b)(6) topic 16 seek essentially the same information as document request 16.

The court now describes the evidence about the capabilities, or limitations, of Mirand's dialing and technology systems to provide information responsive to the foregoing discovery requests.

### III.     Mirand uses dialing and technology systems.

Supported by affidavit and deposition testimony, Mirand has described the dialing and technology systems it uses, and their capabilities, generally as follows.

Mirand uses a dialing system provided by a third-party vendor to make outbound collection calls to individuals, and it uses technology to monitor and track the calls that are made, and to keep notes on the accounts placed with it for collection. The technology is known as "Latitude." (Affidavit of Linsy Goodson, Dkt. 64-1, ¶¶ 4, 6). The dialing system used by Mirand before January 2019 was called "DialConnection Enterprise"; as of January 2019, the dialing system used by Mirand is called "DialConnection Mobile Comply."[13] (*Id.*, ¶ 6). Both systems are tied into Latitude, in that Latitude is used to keep track of the calls made through the dialing systems and to record information about the calls. (*Id.*) All outbound calls made by Mirand during the putative class period using the dialing systems/Latitude technology are debt collection calls. (Transcript of deposition of Linsy Goodson, Dkt. 62-1, p. 21, lines 8-16 (or 21:8-16).

---

[13]     Apparently, the difference (or a main difference) between the two dialing systems is that DialConnection Enterprise was "housed" behind a firewall at Mirand and DialConnection Mobile Comply is a cloud platform. *See* Affidavit of Keith N. Larson, Dkt. 65-1, ¶ 7.

Latitude is organized by collection account. Any particular account can be searched in Latitude using (i) the name of the account holder (the debtor), (ii) the telephone number(s) associated with an account, or (iii) the account number. (Goodson Aff., ¶ 5). An account may have one or more addresses or phone numbers associated with the account, and each phone number may be subject to a different dialing campaign depending on, for example, whether the phone number is identified as a cell phone or not. (Goodson Aff., ¶ 4). Whenever a telephone number is believed to be a cellular number it is assigned a TM code (Telephone Mobile); that information—whether a number is believed to be a cellular number—is provided by the creditor and, although Mirand relies on that information, it may not always be correct. (Goodson Aff., ¶¶ 8, 11).

Mirand's collection employees may "code" a phone number (or account, in some cases) to denote that the phone number should not be called again, using either WN, MRV, SKP, or CD codes, all as described below.

If a called party answers the phone (or otherwise makes an incoming call to Mirand) and states that Mirand has called the wrong person or has called the wrong number (whether or not the called party is being truthful), the collector is supposed to enter the code WN (Wrong Number) for the telephone number that was called. Sometimes a collector may instead enter the code MRV (Manager's Review), when the collector decides the account needs further review by a supervisor, or the code CD (Cease and Desist). It is Mirand's policy to remove from its dialing system all telephone numbers that are marked with a WN code, but Mirand may continue to

9

call any other numbers associated with the account if other numbers exist and calling those numbers meets other of Mirand's calling criteria. (Goodson Aff., ¶ 18; Goodson Dep., 109:2-20)

If Mirand obtains a telephone number for an account through "skip tracing," it marks the number as SKP. Mirand only manually dials telephone numbers assigned the SKP code, and it does not leave messages on any voicemail system associated with an SKP telephone number. (Goodson Aff., ¶ 12).

The CD (Cease and Desist) code is supposed to be used when a called party tells Mirand to stop calling. But a CD code may also mean that the intended recipient of the call told Mirand that he or she (whether or not the intended recipient) told Mirand it had reached the wrong number or person, though as addressed above, when the latter happens, the WN code is supposed to be used instead of CD. No calls via a dialing system are supposed to be made to any number marked as CD. (Goodson Dep., 106:13 to 108:12, 109:17-23; Goodson Aff., ¶ 10).

Mirand also marks an account or a telephone number with a LM code if it left a message for the called party on voicemail. The message could have been left manually or through a prerecorded/artificial message. (Goodson Aff., ¶ 17).

According to Mirand, the Latitude software can query an account or a telephone number for two different types of "code" information but not three. For example, it can query for accounts or telephone numbers marked as both Telephone Mobile and Wrong Number; it can query for accounts or telephone numbers marked

10

as both Telephone Mobile and Left Message; and it apparently can query for accounts or telephone numbers marked as Wrong Number and Left Message. (Goodson Aff., ¶ 16). But, says Mirand, it cannot query for accounts or telephone numbers that meet all three criteria, e.g., Telephone Mobile, Wrong Number, and Left Message. (*Id.*) Thus, according to Mirand, its Latitude system does not permit it to, for example, determine all accounts/telephone numbers for which there was a Left Message, and then cull those accounts/telephone numbers to only those with both Telephone Mobile and Wrong Number codes. (*Id.*) Mirand states that to determine all accounts/telephone numbers meeting LM, TM, and WN criteria, it must manually review every single account. (*Id.*)

With this understanding of the parties' claims and the DialConnection and Latitude technology, the court now turns to the discovery issues.

## Analysis

### I. The court is guided by proportionality principles.

Rule 26 of the Federal Rules of Civil Procedure permits the discovery of nonprivileged matter "that is relevant" to a party's claim or defense and "proportional" to the needs of a case. Thus, mere relevance is not enough; proportionality is key, requiring the consideration and balancing of the importance of the issues at stake, the importance of the discovery in resolving those issues, the amount in controversy, and the weighing of burdens and benefits. *See* Fed. R. Civ. P. 26(b)(1). In addition, as the Committee Notes to Rule 26 emphasize, the parties

and the court "have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."

The court has wide discretion with respect to discovery matters, including in settling discovery disputes, determining the scope of discovery, and otherwise controlling the manner of discovery. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (citations and quotations omitted) ("District judges enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery in a given case."); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1026 (7th Cir. 2009) (decisions on discovery matters are within the district court's discretion).

## II. The plaintiff is entitled to information relevant to Rule 23 issues.

There is no doubt the plaintiff is entitled to discovery relevant to Rule 23 class certification issues. She must be provided with some discovery to assist her presentation of evidence regarding numerosity, commonality, typicality, adequacy (as that element overlaps with commonality and typicality), and predominance/superiority. *See* Rule 23(a) and 23(b)(3). But at this stage of the litigation before a class is certified, it is not proportional discovery to require Mirand to produce information and documents solely grounded (a) in any defense by Mirand that a called party did not consent to the call or (b) in determining the extent of class damages. To the extent discovery is otherwise proportional to the

12

class certification issues, the fact that it also may bear on a consent defense or on damages does not permit the discovery to be withheld.

The extent of discovery the court will compel on class certification issues is guided by balancing the plaintiff's right to appropriate discovery and the defendant's professed inability to produce information in some forms without conducting an account-by-account or telephone number-by-number manual review. The court will not, at this time, require Mirand to make any manual account-by-account or number-by-number reviews. Mirand must produce to the plaintiff information available through queries of its Latitude system, whether or not each such query will result in a list of accounts or telephone numbers that identifies each TM with a WN and a LM. Multiple queries can be made, resulting in various lists of data. The plaintiff then may be able to conduct cross-checks of the lists to identify telephone numbers and/or accounts sufficiently typical of the named plaintiff's claim—a call to a cell phone number using an ATDS or an artificial or prerecorded voice that did not reach the intended party (the Woodforest Bank debtor).[14]

The court has endeavored to determine appropriate queries that must be conducted, but its list of queries may be underinclusive. Mirand has taken the position—which the court rejects—that no queries are possible that could assist in

---

[14] The fact that a called party may not have been truthful about whether Mirand had called the wrong number (or wrong person) is not a reason to deny Rule 23 discovery. If a class is certified, there are methods to assure that a class member was or was not the intended recipient of the call.

determining whether a class is appropriate. And the plaintiff did not suggest any particular queries—taking a more generalized position that she is simply entitled to discovery that is relevant to class certification and damages. The plaintiff is not concerned about how Mirand must go about gathering the information or whether gathering particular information is burdensome or expensive. She cares not whether an account-by-account or number-by-number manual review would be necessary, but the court is not willing to require manual review at this stage.

Mirand must produce within 14 days results of the following queries in a format (if at all possible) that will permit the plaintiff to conduct her own searches within the results.[15]

1. A query of all telephone numbers marked as TM, with a resulting list that gives the telephone number, account number, and account name(s). The list should be sorted by telephone number.[16]

2. A query of all telephone numbers marked as TM and as WN, with a resulting list that gives the telephone number, account number, account name(s), and date WN was entered. The list should be sorted by telephone number, and then by date WN was entered.

---

[15] The parties must promptly confer and address whether a format is available that will permit the plaintiff to search and sort within the results from the various queries. The court expects Mirand to consult with technology experts if necessary. It appears to the court that Mirand has a reflexive "no" answer to requests for information, and the court expects Mirand to diligently investigate format capabilities, acting as if its own counsel wants a searchable format.

[16] This query satisfies RFPs 11-12, 16, and 18, Interrogatories 9-10 and 14-15, and Rule 30(b)(6) topics 13 and 16.

3. A query of all telephone numbers marked as TM and as WN, with a resulting list that gives the telephone number, account number, account name(s), and date WN was entered.  The list should be sorted by date WN was entered, and then by telephone number.[17]

4. A query of all telephone numbers marked as TM and as LM, with a resulting list that gives the telephone number, account number, account name(s) and date(s) LM was entered.  The list should be sorted by telephone number, and then by date LM was entered.

5. A query of all telephone numbers marked as TM and as LM, with a resulting list that gives the telephone number, account number, account name(s), and date(s) LM was entered. The list should be sorted by date LM was entered, and then by telephone number.[18]

6. A query of all telephone numbers marked as TM and as CD, with a resulting list that gives the telephone number, account number, account name(s) and date CD was entered.  The list should be sorted by telephone number, and then by date CD was entered.

7. A query of all telephone numbers marked as TM and as CD, with a resulting list that gives the telephone number, account number, account

---

[17] The paragraphs 2-3 queries satisfy RFPs 13-15, Interrogatories 11-13, and Rule 30(b)(6) topics 14-15.

[18] The paragraphs 4-5 LM queries assist in answering the same discovery targeted by RFPs 11, 12, and 16, and assist to provide some information responsive to RFP 17.

name(s), and date CD was entered. The list should be sorted by date CD was entered, and then by telephone number.[19]

## Conclusion

The plaintiff's motion to compel (Dkt. 62) is GRANTED as provided in this order.

So ORDERED.

Dated: July 15, 2020

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[19] The paragraphs 6-7 queries assist in answering the same discovery for which the WN queries provide information.